This is a recording of the Dixie Ernie conference call at the U.S. Court of Appeals, 6th Circuit, on August 6, 2013, at 8.45 a.m. Central Time. Case number 12-5715, Samuel David Moore et al. v. Weinstein Company et al., argument not to exceed 15 minutes per side. Mr. Lutsker, you may proceed for the appellant. Thank you. Mr. Lutsker? Yes. This is Judge Rogers. Can you hear me? I can hear you, sir. I just want to make sure you can hear me. Can you hear me? I can hear you fine. We also have on the line Judge Cook and Judge Van Tatenhoe, who we will all try to identify ourselves if we are to ask you a question. Is Mr. Harvey there as well? Yes, Your Honor, I am. And you can hear? Yes, sir. Thank you. Okay. We're ready to go. You have an initial 12 minutes, Mr. Lutsker. Please proceed. Thank you, Your Honor. May it please the Court, I am Arnold Lutsker, and I represent the plaintiffs, and the appellants in this case, Sam and Joyce Moore. And first, I just want to thank the Court for rescheduling this argument, and I'm pleased that my opposing counsel, Mr. Harvey, is healthy and available to participate. I know that the Moores regret that they can't physically be present in court for this case, which is so important to them. For purposes of the appeal, the plaintiffs are zoned in on two issues, publicity and trademark. Let me put these issues in context. The key defendants, the Weinsteins and Concord Records, know Sam Moore very well. They know his legendary musical career. They know he is Soulman Sam Moore. They know Sam and Dave were Soulman Sam and Dave. Harvey and Bob Weinstein did a 2002 documentary on the Stack Soul era called Only the Strong Survive, and Harvey Weinstein got Sam and Joyce Moore to heavily promote the film in Cannes on Jay Leno's program where Sam Moore sang Soulman with Isaac Hayes. When this film was first pitched to Harvey Weinstein, Hollywood agent Robert Newman sent him an email, which is in the record, and it gave the film's message as two Sam and Dave-like soul singers who loathe each other are reuniting. When Roger Friedman told Harvey Weinstein that the story and impending marketing encapsulated Sam's career, and Mr. Friedman was a friend of both the Weinsteins and the Moores, Harvey wrote to his brother, who was shepherding the project, you have to have Sam participate in this movie. The record shows that both the Weinsteins and Concord market the film specifically to Sam and Dave fans. The trailer for the movie and the advertising don't suggest the story of backup singers. Rather, they promote the storyline about soul legends. Even the director, Malcolm Lee, suggested that that was not what his film was about. Concord Records even had the chutzpah to title the ad insert that it released with every CD and every DVD as the original Soulmen are at Stax. The producer, the director, the writers, Concord's in-house people, they all know Sam Moore, they all associate Sam and Dave with Soulmen, hold on, I'm coming, Memphis, Stax. For decades, decades. Mr. Lusker, may I ask, you're, you know, broad strokes, you're saying they all know Sam and Dave. Do they, are you speaking about their personally acquainted, or you're saying they, like everyone who knows anything, should know who Sam and Dave are? I'm saying both, really, Your Honor. Really? Is that in the record? It's in the record. Our briefs cite various points to these in the record. Concord Records was going to do a music deal with Sam Moore. He had produced, he was going to produce a record album, and they bagged it just shortly before the film got underway. Harvey and Bob Weinstein produced a movie when they were at Miramax called, they said, Only the Strong Survive, which was the story of the legendary period of the 60s of Stax Records. They know him professionally, they know what his brand was, and the record reflects that. Okay, I didn't hear record cites, but you're telling me they're there? Yes, yes, we have citations in the record. So, Will, whatever I'm asking, your view is that it's already contained in your brief? Correct, correct, Your Honor. Okay. Mr. Luska, this is Judge Rogers. It seems from your description that they ought to have collaborated instead of done it independently. But, you know, this is a court of law. We've got to fit it in with a category. And the district court went through and dealt with each of the categories and didn't find that it fit within any of them. So, can you sort of focus on which category it fits in? You said you're going to do publicity and trademark. Yes, let me first focus on the publicity. In Judge Trauger's 98-page ruling, she devoted a total of three paragraphs to Mr. Moore's publicity claim and essentially virtually dismissed it summarily. The grounds that she dismissed it on were two, that Mr. Moore failed to show that defendants used his name and his photo in the film. The film does not contain the name Sam Moore, and it doesn't contain his picture. And that, as a result, no one could understand that a fictional film concerned him and his 60s duo, Sam and Dave. But very respectfully, under Arizona law and the law of this circuit, the district court's ruling was unduly restrictive when dealing with the right of publicity. Whether Sam Moore was identified is a question that looks to many in Disha of personality. And it can be a nickname, a phrase, an object, a voice, a performing style. There are cases that we cite in our brief in terms of Crazy Legs Hirsch, Muhammad Ali as the greatest. You have Bette Midler with her voice. You have Tom Waits with his voice. There are ways in which you can summon up the personality of an individual. In our case, we feel in the publicity analysis, and if you look at her discussion in the brief, as I said, it's three paragraphs long, and she ignores the fact that a nickname can be sufficient to trigger a publicity issue. And what we say is there are many more elements besides just the nickname that are there. The vocal style. This is Beth Rogers. Can you hear me? Yes, I can. I have this question about publicity. It just doesn't seem to fit within what we think about as a right of publicity case. Most right of publicity cases, the classic one is, you know, you take somebody's face and you say, you know, buy X product under that person's face. Or you take a picture of Audrey Hepburn and put your diamonds on her and say, buy these diamonds. You know, that's using her face to sell something on the one hand. And then on the other hand, you have things which don't seem to violate the publicity cause of action, such as TV shows that are loosely based on fact, or biopics, or stories that are generally inspired by factual situations that have been in the news. Do you have any cases that are closer to that kind of situation to support you? Because that's what this arguably looks like. Well, I mean, yes, I do. And I'd say that, you know, certainly we cited the Tony Twist case you have, which was a storyline about a character that had similarities to a hockey player. There are recent cases in the Jeep and Post-it. Which court held that that was the right of publicity? That was a district court in Missouri. And there are two recent cases in the Third Circuit and the Ninth Circuit that deal with the use of – this is becoming a hot issue in the video game area. And there are college football players whose statistics and names – not necessarily names, but statistics and persona are being incorporated into video games. And the question is whether they sufficiently identify actual players and require permissions. One is the Hart case that just came out of the Third Circuit. And there's – just last week, the Ninth Circuit dealt with the issue in the NRAE NCAA student athlete name and likeness litigation. I think, though, Mr. Lesker, yours is different in that you are, as you term it, there's a summoning of a personality. There's a total summoning of his personality, yes. Well, isn't that – would you agree that this is quite different from exact statistics of a college player, you know, the case you're talking about? I take it that's the Ninth Circuit? The Ninth Circuit is – yes. In terms of what I agree that there are differences, the problem that we have here is that the marketing campaign that brings people into the theaters cuts closer to the chase. If you look at the advertising for the film, the trailers, we had a disc that contained almost 30 television ads as well as the trailer. These short snippets portray a 60s soul duo which has a legendary aspect to it. They don't communicate the storyline which the defendants trumpeted that these are backup singers. There's nothing in the advertising that suggests that they're backup singers. Even the director, when he was deposed, and I've got a quotation from him in the brief, and even the director says that there is nothing in these ads that sort of suggests that these are backup singers. They portray them as legendary. Look, when people do a major movie of this sort – Mr. Lutz? Yes. How do you distinguish file pics? By which I mean these TV shows where Princess Di falls in love with Prince Charles and it's visualized on TV with obviously the private discussions are made up. But it's clearly real people. It's called Charles and Di, for instance. Or there's one coming on soon about Hillary Clinton, a live story. Is that the right of publicity so that those can't be made without the person being paid or included? Well, when you do a story about somebody who's a public figure, you have to pay that. But that person can demand money or keep it from being produced for profit. The biopic set of cases and discussions raise a very complicated question, which obviously should be thought of in your mind in connection with this matter, of the nexus between publicity on the one hand and First Amendment on the other. I would respectfully submit that this case is not a case in which you have to address the First Amendment issues, principally because they were never raised below. The defendants may be— But doesn't the First Amendment—pardon me, but this is my follow-up question. Doesn't the First Amendment inform the scope of the very tort? I mean you can treat it as an affirmative defense that wasn't raised or you can treat it as part of the warp and woof of the very tort. Absolutely. If the tort hasn't been extended to certain kinds of areas and this would extend it, then I don't see how the extent to which it was raised below is necessarily determinative. Well, it's critically determinative because it becomes a question of what legal standard do you intend to apply when you deal with a case like this. And respectfully, the case law has a handful of standards. The Hart case gives a very detailed discussion of several different standards. In fact, it looks at the Sixth Circuit and how the Sixth Circuit has navigated these shoals in a complex way. And I'll just add that I know my 12 minutes have expired, but if you want I'll certainly continue on this point, which is important. The baseline point— then I'll do that if that's what you would like. And when you return, will you give us the site for the Hart case you mentioned? Yes, I will. Thank you. Good morning, Your Honor. Mr. Harvey, you have 15 minutes. Thank you, Your Honor. Good morning. My name is Rob Harvey. I represent the appellees, the defendants in this case, the Weinstein Company, Concord Music, MGM, and Genius Products. And each of these defendants had different roles. The Weinstein Company put out the movie. MGM distributed it. Concord put together the soundtrack, the original motion picture soundtrack. And first, I'd like to ask the Court for allowing the rescheduling of this and sorry for the circumstances, and I apologize for any inconvenience to the Court. Both the movie and the plaintiff's case are works of fiction. Now, the District Court issued a nearly 100-page decision. The District Court found multiple reasons for dismissing nearly every claim of the multiple claims that were made by the plaintiff, and we're asking for an affirmance on this appeal. And as the Court realizes from the appellant's brief, not all of the plaintiff's claims asserted below made it to this Court. Some were left on the cutting room floor for intentional reasons or not so intentional reasons, and apparently from their argument this morning, there are additional claims that are finding their way to the cutting room floor as they focus on the Lanham Act and the right to publicity claims that they have. Well, Mr. Harvey, this is Judge Rogers. I think it's admirable that for purposes of discussion, they're only focusing on two arguments. That doesn't mean they waive their other claims. Yes, I understand. You focus on those arguments. Your Honor, I will. An example of the fact that the plaintiffs continue to cite things that are not in the record is shown by their initial footnote in the reply brief, where they announced that Mr. Moore had a recent appearance at the White House. And that's all well and good, and I congratulate him, but it doesn't inform the issues before this court because what we're dealing with is works that should receive full First Amendment protection. Both the movie and the soundtrack are expressive works that have been determined in numerous cases over the years to be entitled to First Amendment protection. This movie- Do you argue that to the district court with respect to the right of publicity claim? Your Honor, we raised the First Amendment issue by footnote because we were arguing at that time about whether there was an Arizona or a Tennessee issue, but we also raised the First Amendment issue at the Rule 12 motion to dismiss stage. So the issue on First Amendment was briefed to the district court. She chose to dismiss the right of publicity claim substantively rather than on a constitutional count, but we submit that this court may dismiss, may dispose of the appellant's right of publicity claim on both the fact that the movie does not use his name, photographer likeness, and the fact that the First Amendment entitles it to full protection. And I believe- What about the Twist case that you're opposing counsel cited? Well, the Tony Twist case, Your Honor, is really kind of an outlier for a couple reasons. One, they used the- it was a comic book that included a Canadian wrestler's nickname, Tony Twist, and in that case, the author of the comic book acknowledged that it was using the wrestler's nickname. There were elements about it, and it is not- In that case, Your Honor, I think that when you raised the issue about biopics and you raised the issue about other types of cases that have elements, if you look at pages 42 through 45 of the district court's opinion, you'll see that the district court very carefully went through the analysis that the plaintiffs made, both in connection with their false light claim that they had not appealed, which is also informed by the right of publicity claim. Basically, they're saying that the movie was about Mr. Moore, and they raised that claim both for false light and for right of publicity. The district court went through and carefully disposed of that argument, finding that some stock references in an expressive work were insufficient for the court to find that the movie was about him or that they were permitted to proceed with a right of publicity claim. A couple of the cases that we had cited in our brief for the proposition on the right of publicity include the Ruffin-Steinbach case, which is about the temptations that the Sixth Circuit decided. The Polsby case from the D.C. Circuit in the late 90s, where a woman claimed that there were elements in a book that were about her life, and the D.C. Circuit says you can't control your public life history, and just like Charles and Diana or Andrew can't control everything that goes on biopics or fictionalized movies, that also this court cannot submit, if I'm in the first amendment principle, it's fine, should allow the claim to proceed. And one of the major cases- As a matter of counsel, as a matter of the applicable law, when you say you can't control that, is that in the form of a defense to a claim that otherwise could be made, or is that just not part of the right of publicity in the first place? Do you see what I'm asking? I think you are. The numerous cases that have wrestled with the difficult issue about how you handle the competing interests of right of publicity in the First Amendment have basically said that the First Amendment informs the entire discussion. First of all, we submit that we did raise it, but second of all, I don't believe that it's an affirmative defense necessarily. The numerous cases that have disposed of right of publicity cases have found, in numerous instances, number one, that it wasn't about the individual who was suing, and two, that the First Amendment still would not permit the claim to proceed. I mentioned that the Polsby case and the Ruffin-Steinbeck actually was a case involving somebody who actually had elements of their life in a TV miniseries, and the Sixth Circuit said, well, they are entitled to fictionalize a person's life, and the First Amendment does not permit the claim to proceed. Another major case that really is not dealt with by the Sixth Circuit case, Your Honor, is Ruffin-Steinbeck. It had to do with, I believe, a four-part miniseries that was on NBC a number of years ago. A major case not dealt with by the plaintiffs in any fashion is the Polidoro's case, which is a California Supreme Court case involving the movie The Sandlot. It was a fictionalized movie about a bunch of kids enjoying playing, it wasn't even really organized little league baseball, but it was a movie that had Babe Ruth long after his death making an appearance. It had a dog. Mr. Harvey? Yes, Ron. Sorry to interrupt. That case, the California Supreme Court did not apply the restatement, did they, to that court? I thought that that was a distinguishing feature. Well, Your Honor, in the Polidoro's case, they were dealing with a California publicity statute. I would have to go back and refresh my memory if they also looked at the restatement issue because here we are dealing with what we would consider to be the restatement application under Arizona law. The only three cases in Arizona law, first of all, we're not aware of a state court case that has applied it, but there are a few district court cases that have. In each of those cases, it had to do with what I believe Judge Rogers mentioned early on. Those are all rights publicity cases that involve actually being about someone. One was a pro-golfer who was used in an advertisement. One was Metal Ark Lemon, whose image was used by the Harlem Globetrotters. Those are actually about people. In this case, everyone, the record clearly shows, and the district judge found, that everyone involved in making this movie said that it wasn't about anybody in particular. It started off as being possibly a movie about two competing barbecue stand guys at war with each other, and somebody else came up with the idea that, well, how about if we have two backup singers to a famous guy named Marcus Hooks. You had two guys calling themselves The Real Deal backing up a fellow named Marcus Hooks, who was played by John Legend in the movie. It turned out to be what Harvey Weinstein described in an email to Mr. Friedman as about two grumpy old men. To be fair, some of the emails discussed Sam and Dave. Yes, Your Honor. Mr. Lusker mentioned one email where some agent who had nothing to do with the movie said, Hey, it's sort of Sam and Dave. How many emails do you need, though, really? What the judge found is when you look at what Mr. Moore claims were elements taken from his life, which are just stock elements, and you look at all of the issues that are complete factual distinctions between his life and anyone else's, Your Honor, the judge simply found on false light that this movie was not about Sam Moore, and those same reasons were applied to the right of publicity claim. If I may, Your Honor, I just have a couple of minutes left. If I could move on to the Lanham Act claim briefly. Sure. Go ahead. There were two issues raised on Lanham. One was that Mr. Moore claimed that his common law marks, purported marks, which included a family of five different marks, were infringed upon by the movie title, Soul Men. We're dealing with no registered marks here. We've only got common law rights, which we believe that the record would show that there are no common law interests here. Even if there were, Judge Trauger applied the Rogers test, which he found was required from looking at the Parks v. LaFace case and looking at the ETW Tiger Woods case in terms of applying the fact that there was artistic relevance to the fact that the movie title was Soul Men. The district judge found that the movie title was not explicitly misleading. The application of the Rogers test in the First Amendment barred the claim about the movie title. The plaintiffs came up with a different argument at the motion to dismiss stage arguing about competing titles that they argued took them outside the Rogers factor test. If you look at that, they claimed an interest in a 1967 Atlantic album and in a 2008 historic film's DVD. The district judge found two reasons for those to be dismissed. One is that the plaintiffs had not shown a scintilla of any ownership interest in either of the titles of the Atlantic album or the historic DVD. Second, the district judge went through the comprehensive eight-part test for likelihood of confusion and the plaintiffs have not even appealed the likelihood of confusion issue in this case, which we believe would require that the summary judgment be granted on that ground alone. It's nowhere in their brief. There was just no protectable interest that the plaintiffs had in either of the titles that they were pursuing at this point. The plaintiffs also raised an issue about federal dilution. They tried to raise an issue about state dilution. We submit that the record clearly supports the district judge's finding that the standard is that there must be a marked claim for dilution and that the facts in this case, there was a claim made about unfair competition. There was a claim made about some Tennessee statutory claims. The district judge disposed of the Tennessee statutory claims, finding that the Tennessee statute simply did not apply. The plaintiffs, for the first time on appeal, have attempted to raise what they claim are equivalent Arizona, either common law or statutory claims. We submit that those have been waived and that even if they hadn't, the facts don't support any argument here that would allow those claims to proceed. Mr. Harvey? Yes, Ron. Mr. Harvey, I wonder if you're concluding that aspect of your argument, I wonder if I could take you back to publicity for a moment and ask you to be very specific about where you believe that your First Amendment defense was raised. In as much as we don't see it discussed by the district court in that lengthy opinion, where exactly do you say it was brought before the district court for consideration? Your Honor, it was mentioned, the district judge in her... Mentioning? I mean, I mean raising it. Yes, Your Honor. The district court, in her discussion, found that we had raised numerous arguments about non-publicity in footnotes. Are you able to point me? I'm sort of looking for... Yes, Your Honor. If you give me one second. We had briefed and argued the First Amendment and publicity issue at the motion to dismiss phase. We had raised it in our answer. We did raise it, as Mr. Lutzker has pointed out, by footnotes. Where's the footnotes? There's two. Your Honor, see, we raised in footnote 14 of our brief, when we're talking about publicity and privacy actions, we discussed the Rogers case and... I'll be happy to submit that, Your Honor, if you prefer. And the test under the First Amendment issue in the ETW Tiger Woods case, the Sixth Circuit actually decided that there were kind of a combination of tests, all of which would not allow the right of publicity claim to proceed. In that case, as Your Honor is aware, we actually included an actual image of Tiger Woods in a collage that involved Masters of Augusta. My time has expired, Your Honor. Mr. Harvey, this is Judge Rogers. I see your time has expired. If you want to submit a 28-J letter with supplemental authority that doesn't have any word of argument, that just has citations to your lower court brief or your lower court record, that would be fine. I will, Your Honor. Thank you. Mr. Lutsker? Actually, we would like to have that. Could you do it today? Yes, absolutely. That would help the panel. Thank you. Mr. Lutsker? Yes. First, let me just reset my time here. Okay. First, Judge Cook, the site for the Hart case is 717 F3rd 141, 1213 U.S. App, Lexus at 10171. Thank you. Second, in terms of Mr. Harvey's comment just now, we really don't think this was raised properly below. His footnote 14 on page 12 of his district court brief is primarily designed to reinforce their argument that we did not properly raise a choice of law issue, and he focuses on the competing titles in Rogers and Grimaldi. There's a citation. There's one line in passing that appears in an introductory section of the brief. There is no First Amendment analysis, and this court we respectfully submit shouldn't travel into the very complicated balancing, the ad hoc balancing requirements which you articulated in the Woods case that suggests that when you deal with the right of the celebrity to protect his publicity rights and the First Amendment, there is an ad hoc balancing test, and you look to a number of factors which have not been briefed, not been presented, and it was the defendant's choice not to do that. They specifically asked permission of the court to supplement the brief, and the court rejected that authority, and they said we're going on what we've got, and they did not have this issue before them. I would also add that in addressing Mr. Moore's publicity rights, the district court absolutely omitted any discussion of the defendant Concord's advertising inserts, which I mentioned earlier, but I want to reemphasize this point because it is critical to Mr. Moore. They had advertising inserts which do not have any protection as expressive speech. These are advertising promotional material entitled The Original Soul Men Are at Stax. They were incorporated in every CD and in every DVD, and unlike the film, because they're not expressive speech, they use his entire nickname, The Original Soul Man, and one of the trademark disputes that we have with the court's analysis is we do not think the court properly assessed the facts on the record that Mr. Moore for decades promoted himself as The Original Soul Man, and it's not simply that he sang the song Soul Man. This song has been his trademark. The phrase Soul Man has been his trademark for his professional career. I'm sorry, but is it true that the item insert you're referring us to includes a host of other people, that Mr. Moore is among a big group? No. Unlike this, the ads are trumpeting The Original Soul Men Are at Stax, and then they are selling other Concord label performers, Angie Stone, Layla Hathaway, Nick Acosta. They boast that if you can't get enough of the sweet soul music, log on to StaxRecords.com and you'll find these essential Stax titles and thousands more. They are promoting their record library under the brand The Original Soul Men Are at Stax. That takes his publicity. This is an issue not addressed by the court below. It addresses his publicity rights. We could have had a case just on this issue alone, and that would have been sufficient to get Mr. Moore to a jury. Does this advertising insert exploit improperly his professional persona to market products that are not Sam Moore? That's what we believe, at the very least. I understand the complexities with motion pictures. We do not think the First Amendment issue is properly before the court, and it was the defendant's choice. It wasn't the court's decision. It was the defendant's decision not to bring the First Amendment into play. You don't have to take this as a complex challenge between publicity rights and First Amendment and film and expressive speech. It's not in the record on appeal. It's not in the record for summary judgment. We respectfully submit that the cases show how complex this issue is. You look at jurisprudence across the nation, literally, because there aren't that many First Amendment publicity cases, but you don't have to go there because that issue is not before you. The only question on publicity is did Arizona law, which says you've got to find the name in there, and the judge said, I don't see Sam Moore's name, and we say, whoa, you've got his nickname, you've got all these other indicia, let a jury decide whether Sam Moore's persona was used in this film. And if the defendant at a later point brings up other issues, then we'll deal with it at that point based on the full record. Thank you, Mr. Lester. It's obviously a very interesting case, and it'll be submitted. Thank you very much. Thank you, Your Honors. Thank you, Your Honors. Thank you. Gentlemen, you may hang up at this time. All right. David? Yes, ma'am. I just want to make sure the attorneys have disconnected. Yes, ma'am. Both attorneys are on. Okay. And Judge Rogers, if you don't need anything further from me, I'll disconnect, and then David can disconnect, and you'll be ready to confer. Thank you. Thank you.